We are here on the matter of Saranchak v. Beard. Judge Smith, can you see us and hear us? I can see you and hear you both very well. Good afternoon. Very good. Good afternoon to you as well. We gave 15 minutes to each side, but we expect that there will be more time needed here, so we'll give you some additional time. There are several issues that are very important. Mr. Barker, are you ready to proceed? Good afternoon, Your Honors. May it please the Court, James Barker from the Office of Attorney General, appearing on behalf of the Commonwealth Respondents. We brought this appeal because the District Court, while it correctly recited the standard that applies to a petition We were the respondents and the District Court were the appellants here. However, the District Court did not properly apply the standard, and in fact, with respect to the majority of the issues, applied what is effectively a de novo standard of review. Why do you say that? Tell us. I'll start with the first issue in our brief, which is the diminished capacity defense ruling. The defense spoke to Dr. Kruschevsky, I believe is the pronunciation, and he indicated that if he had been given certain documentation by defense counsel, that he would have opined that the defendant was incapable of forming the specific intent to kill, which is necessary for a first-degree murder conviction in Pennsylvania. And what did the PCRA Court say about Dr. Kruschevsky? The PCRA Court discredited Dr. Kruschevsky's testimony and said basically that the evidence was overwhelming, that the defendant in fact did form the specific intent to kill. You can say that your opinion is that he didn't do so. However, all the evidence is to the contrary, and it started with a statement some three and a half hours before the murder to the effect that I know where there's some money, but we may have to shoot somebody to get it. Didn't the PCRA Court say it was arguable that there was ineffective assistance? What they said was that it was arguably ineffective not to provide the documentation. However, to actually complete the thought as to whether or not counsel was ineffective, you still have to show prejudice, and it's the prejudice prong that the PCRA Court reviewed and found to be lacking. And what are you arguing before us? Are you arguing that he may have been ineffective but there was no prejudice, or are you challenging the ineffectiveness? The Commonwealth, in its brief, we conceded that counsel should have turned over this documentation. Therefore, the standard was out there. Do you believe that documentation versus the failure to investigate more thoroughly? As far as the failure to investigate, there was no evidence at the PCRA hearing that further evidence would have been uncovered. What was presented at the PCRA hearing was documentation  Did the PCRA Court make any finding as to Dr. Krasuski's credibility? Yes, Your Honor. In conjunction with the prejudice ruling, the PCRA Court found that it was not credible. And the reason it wasn't credible was this overwhelming evidence to the contrary. So there was nothing intrinsic to his testimony. It was just that the other evidence outweighed what Dr. Krasuski testified about. Or was there something more? I think there was something more to it, Your Honor. What the PCRA Court was saying was, because it's really not reasonable to say that this person could not form the specific intent to kill, I don't believe this doctor. And it's sort of an interrelated argument where you have this overwhelming evidence to the contrary. But essentially, and as the Supreme Court of Pennsylvania put it, it was conclusive evidence that this person did form the specific intent. All of the evidence suggests that. When did Dr. Kropp testify? Was it at the PCRA? Yes. Was that the PCRA? Correct. He was the psychologist who testified. That's right. A certified psychologist. Right. Did the PCRA Court say anything about Dr. Kropp? Well, Dr. Kropp did not offer an opinion as to whether or not the defendant could form a specific intent to kill. So there was no reason to evaluate that. But didn't he offer an opinion at the diminished capacity? Maybe not at the time of the homicide. But he did offer considerable testimony, didn't he, as to what the forensic mental condition capacity was. He found that he suffered from alcoholism and that it would have affected other disorders that he had, but he did not reach a conclusion as to whether or not he could form the specific intent. He said he was substantially impaired. But the conclusion that the impairment would have substantially diminished his capacity to formulate a specific intent. And, again, the PCRA Court's finding was that that simply is not a reasonable opinion. And I'm not sure that that was Dr. Kropp. Did it say that about Dr. Kropp? No, because, again, Dr. Kropp did not reach that issue. He did not offer an opinion as to the diminished capacity. But it didn't comment on Dr. Kropp, did it, the PCRA Court? No. And I don't think that the PCRA Court discounted the fact that the defendant was an alcoholic. The question, though, was … Well, was he impaired? I believe the evidence showed that he was impaired. And so you accept that? I would accept that he was impaired at least to some extent. All of the evidence was that he had been drinking. I think the point was substantially impaired. Wasn't that the language that Judge Sirica just quoted? And I would concede that the record would support that. You know, he had been at the bar drinking. He went out and bought two more quarts to share with his co-defendant. And this was over the course of several hours. But that's a pretty good amount of drinking. On this particular issue, as you've noted, the focus is on prejudice. Yes. And what are we to make of the fact that the trial judge was the PCRA judge and the trial judge made a determination that had he heard Dr. Krasuski's testimony, he would have reached the same result? Your opposing lawyers here say that that doesn't make any difference under Strickland and that it's an objective standard. I'm not sure what that means in this case. But the point, I think, is that we cannot accept the PCRA judge's opinion that he would have come to the same conclusion, that that's simply irrelevant for our purposes, if I understand the defense's argument here. I would say that it's not controlling, but it doesn't make it irrelevant. I think it is a consideration as to whether or not a reasonable fact finder would have held to the contrary. And this goes to the standard being sufficient to undermine confidence in the outcome on the prejudice problem. I don't believe that the trial judge being the PCRA judge and saying it wouldn't have changed his mind is controlling, however. I think that it is a reasonable fact finder standard. And so I would not take issue with the defense on that point. How do we formulate that? You have the person who made the determination as to degree of guilt, and then later on that same person says it wouldn't have made any difference if I had heard this other testimony. I think it still needs to be done as an objective test using the reasonable fact finder standard, and I believe that would be directly under Strickland. Well, then let me turn the question around. If we were to find an objective, I guess you're saying it would be possible for a reviewing court, one collateral review, to find that despite the statements of the PCRA judge, that that was not an objective evaluation. Is that correct? I believe that would be possible. Why shouldn't we do that? Well, the district court finding here was basically since this evidence was admissible, it's sufficient to undermine confidence in the outcome. And that's simply incorrect. You can have plenty of admissible evidence that would not do that. Let's assume you're right on that point. I would suggest that you still review this from an objective standard, and you would look at this. All of the evidence suggests that this defendant did formulate the specific intent. Therefore, objectively, it would not change the outcome. The verdict would have been the same, regardless of whether the PCRA court was the judge or any reasonable jurors. Let me ask you another line. Is it so that there was no instruction to the jury with respect to mitigating circumstance pertaining to the influence of extreme mental or emotional disturbance, even though counsel requested such an instruction? That's correct, Your Honor. And I believe the reason for that was that there was really no evidence to support that mitigator. Okay. And the majority of the Supreme Court says that's true. Well, the trial court denied the request on the sole basis that there was no expert testimony to support it. At least that's what Justice Thaler said, and presumably Justice Thaler. And my question then is, well, doesn't that show that counsel was ineffective in failing to find and produce that evidence so that there would have been enough evidence to support an instruction on mitigating circumstance due to the influence of extreme mental or emotional disturbance? Your Honor, I'm not exactly sure how the two would relate, except that if your suggestion is that the drunkenness amounts to an extreme emotional disturbance, because based on this record, there really was no evidence to support that particular mitigator. I'm taking my question from Justice Thaler's opinion, concurring and dissenting, in which he says that it is evident from the trial court that had this information been elicited during the penalty hearing, the court would have instructed the jury as to the mitigating circumstance pertaining not to alcoholism, but pertaining to the influence of an extreme mental or emotional disturbance, citing Pennsylvania statutes. And as I understand what Judge Thaler, Justice Thaler was saying, was that, look, he, counsel didn't do this. Had he done this, then there would have been a basis to instruct the jury on mitigating circumstance. Because he didn't do it is the only reason why the majority of the Supreme Court says it wasn't prejudicial. How do you answer Justice Thaler? And how does the majority answer Justice Thaler? I would start with the fact that that is sort of a separate issue from what's before the court today. Why? Because the diminished capacity defense is not the same thing as an extreme emotional disturbance. And so the record for each would be separate. Mr. Barker, can you hear me? Yes, I can, Your Honor. Are we concerned in any way with what occurred at the penalty phase here today? Well, I believe that the diminished capacity argument would go to the degree of guilt hearing, I guess it would be. And as far as the suppression of statements, no, I don't believe that that really would be an issue. All of that evidence was presented in essence to – normally in a jury trial, you would have a jury trial. You would have incorporated all of the evidence. Effectively, that's what happened. Are we concerned with any jury issues here this afternoon? I don't believe that we would be. The only way – Our entire focus – there is some delay, unfortunately, here in the electronics of this video system. So excuse me if I've interrupted you, but there's probably a second to two-second delay. Our entire focus should be, as far as both parties are concerned, should it not, on the degree of guilt hearing and the determination that was made by Judge Dolben with respect to first-versus-third-degree murder. I believe that's correct, Your Honor. Then why did the district court vacate the conviction? Your Honor, by finding error in the degree of guilt hearing, it would necessarily vacate the sentence that was opposed to the conviction. That's different than vacating the conviction. And yet her order clearly says that she vacates the conviction and sends it back for a new trial on guilt. That's correct. But by doing that, she would necessarily, by implication, be vacating the sentence. Yeah, no, that's true. But what is before us? Is it whether we – can you do that? Could she have vacated, required a new sentencing hearing, picking up Judge Smith's question without vacating the conviction? If she had found error in the penalty phase, however, the errors that she found were actually in the degree of guilt hearing. And that's not part of the penalty phase, the degree of guilt hearing? I mean, where does that fit in? Does it fit into the conviction or does it fit into the sentencing? I believe it would fit into the conviction, but once the conviction is vacated, the sentence would, by implication – Well, of course. But the question is, can you have a remand or an order requiring a new hearing on the sentencing without going into the conviction? Well, of course you can. We always do it. It's happened a number of times. But where does the degree of guilt come in? Can you have a new hearing on the degree of guilt without vacating the conviction? I believe you would, Your Honor. Have you seen that in the Pennsylvania courts? I have not seen that before because most of the time there's a jury trial to establish degree of guilt. This is sort of an odd happenstance where there's an open plea to homicide and then there's the degree of guilt hearing. That's a little bit unusual. I have seen it before, but what I have not seen is error found in the degree of guilt hearing as opposed to the penalty phase. And where do you – so just to make sure we're clear, the penalty phase is not before us today. Is that your understanding? I would suggest that that's correct, Your Honor. And we're simply reviewing error with respect to the finding of guilt, which, of course, resulted in a conviction of first-degree murder after a plea of guilty. Now, he pleaded guilty. Let's assume that we disagree with the arguments, but we're not sure how to deal with what goes on afterwards, that is. As Judge Sloboda pointed out, Judge Rambo vacated the conviction. That's what we have before us. Remanded for a new trial. Now, does that mean his guilty plea is also vacated? And if so, I assume he could elect to go to trial if he wished, either before a jury or before a judge. I would suggest that if it went back – I would suppose that the standards that apply normally for withdrawal of a guilty plea would apply then. What are they? Help us out. He would have to show some kind of a miscarriage of justice at this point. He would have to show something more than simply, I changed my mind about it, that there was some reason for withdrawal of the plea given this amount of time. However, it gets a little bit complicated because under Pennsylvania law, if you haven't been sentenced, it's virtually automatic. All you have to do is basically say, I've changed my mind. Well, I don't understand. But I'll ask them. I don't understand Sarancha's counsel to be challenging the guilty plea. But I'm telling them in advance so they can be prepared to answer. At least the brief doesn't challenge the guilty plea. There has been no challenge to that. So then where does that leave us? I believe if the case were to be remanded to state court, essentially he would be in a position where he has pled guilty generally and he is awaiting his degree of guilt hearing. Mr. Barker, let me just try to clarify here for myself. If your position prevails, we must still remand to the district court for resolution of those, I believe, eight issues that were raised and were not resolved, which include an ineffectiveness claim with respect to the sentencing. Am I correct? I believe that's correct. Our questions of the last few moments have focused on what happens in the event that we were to uphold the vacator of the conviction. Just for clarification and to satisfy myself that I correctly remember Pennsylvania law, and I don't want to assume that, is there a conviction under Pennsylvania law if there is no sentence? No, there's not. In Pennsylvania, it is a judgment of sentence. There is a conviction, but that's not a final judgment. And if there was an error at the degree of guilt phase here, such that the degree of guilt phase must be repeated, then the sentence was necessarily infirm, correct? I mean, we can't have the imposition of a death penalty here if in any way the determination by the common pleas court judge that this was first degree murder was somehow infirm. That's correct, Your Honor. Under Pennsylvania law, when a case is remanded, if there's an error at trial, the sentence is vacated, so you would have to go through the entire process again. If we agree with your position, do you know of anything that would prevent us from remanding the case to the district court for them simply then to proceed with resolution of the issues that have yet to be determined? There's nothing – that's a no-brainer, right? That's correct, Your Honor. There is no issue to review because the district court hasn't ruled on the remaining issues. And if we were to disagree with your position and determine that the PCRI-K court erred and that either because the wrong standard was applied or because there was even some determination made with respect to the weight of the evidence, is there any reason why this court could not direct the district court to then direct the Pennsylvania court system to simply repeat or retry the degree of guilt phase? Do you know of any reason why that couldn't occur? No, Your Honor. As I said, that's what I would have expected to happen. Let me take you through another area, which we haven't discussed. The district court also found ineffectiveness with respect to the failure to move to suppress the evidence. Now, if the district court were correct, let's just say the Miranda warnings by the police leave aside Ms. Garber for this point. Does that go to the validity of the conviction or to the penalty? I believe it would go to the conviction, to the degree of guilt proceeding again, yes, because the statements were admitted at that time. As I said, at the penalty phase, they were admitted again. However, that's so that the jury can hear what the crime is about and does not so much go to any of the aggravators. I may not understand. The jury never decided guilt or not, right? That's correct. I mean, there was an open guilty plea to homicide. Correct. Okay, so when did the evidence of the statement to the police officers come in? It actually came in at both the degree of guilt proceeding as well as the penalty phase. It came in twice. It came in twice. And they were both before the jury? The degree of guilt was before the trial court. That was non-jury. And then the penalty phase was before the jury. And it would have been relevant in the penalty phase because the aggravators included a murder, two murders basically being committed at one time. And so we would have to associate the defendant with each one. And, Mr. Barker, assuming a Miranda violation, assuming that Miranda violation with respect to the statements to the police officers, and that that evidence came in, as it did, at the degree of guilt phase, and that it came in improperly, does it matter? Did it matter to the trial court's determination at the degree of guilt hearing? To ask the question another way, to what was this evidence probative and what prejudice could have inured by this constitutionally infirm evidence, the statements to the state troopers come in? Well, the statements to the state troopers, the prejudice would be obviously that the defendant himself confessed. It would go back to But he pleaded guilty. He'd already pleaded guilty. So what difference does it make at the degree of guilt hearing? And I agree with that, Your Honor. It would still go to who was the actual shooter, which could affect Was there any question as to who was the actual shooter? Not based on the evidence that was presented. As a matter of fact, it was in the court evidence. That's a sort of red herring, isn't it? Well, unless you say it's not prejudicial. That's my argument, is that it's not prejudicial. And what I was asked was to try to show some prejudice. My argument is that it's not prejudicial. You have the defendant was associated with the gun that was used. He sort of had a grudge with his uncle that he murdered. He had pled guilty, so we kind of had identified who was involved in this. There really wasn't much prejudice from this, especially in the context of the statements to Ms. Garber, who was the social worker, where he said the same things, plus admitting. Put aside the statement to Ms. Garber. Put that aside for purposes of this line of inquiry. Looking solely at what Mr. Saranchat told the state police and assuming that they violated his Miranda rights such that, for hypothetical purposes, none of those statements should have come in. And as we know, they all came in at the trial court degree of guilt hearing. Was there anything in those statements, A, that told the trial court judge anything he did not already know from other witnesses, and, B, that might have otherwise been in any way unfairly prejudicial? I would suggest that the answer to both parts of your question would be no, Your Honor. I don't believe he didn't hear anything that he didn't already know, and there's no way that it would have been otherwise prejudicial given that you already knew the same information. When was this – I want to go back to that. It's not clear. Did the police evidence come in before Miles testified? Wasn't – I mean, wasn't – didn't the court say it wasn't prejudicial because we got the same information from the testimony of the co-conspirator or the – That's correct, Your Honor. – co-actor? That's correct. And that was the PCRA court that said that, right? That's correct. Okay. And the Supreme Court agreed. But Judge Smith's question said that the – asked whether the statements by the police came after the trial court or the PCRA court already had gotten the information. From whom had they gotten the information before the police statements came in? Your Honor, I think you're probably correct that the troopers testified before the co-defendant. However, I would point out that I thought that the gist of the question was that the information was otherwise of record. It was. I did not inquire as to the order of production of the evidence, but rather when the fact finder, when the decision maker had to make his decision, whether the statements to the state police added anything to the totality of the evidence before him that he did not otherwise know from some other source. Let me follow up on that, though. But if the police statements shouldn't have come in, hypothetically shouldn't have come in, then wouldn't there have been some question about the – he wasn't really a co-defendant. Was he a co-defendant or was he just a witness? He was a co-defendant. He was a co-defendant. He accepted a lesser plea. Yeah. The co-defendant was obviously in a position that he wanted to ingratiate himself with the prosecutor because he was looking for a lighter sentence. He didn't want a death penalty. Isn't that right? That's correct. So if all that they had – and leaving aside Ms. Barber, I agree with Judge Smith, but let's leave her testimony aside. If the only testimony – and if the police statements were not admissible, then all you'd have, unless there was other testimony, was Miles' testimony, which one could argue was somewhat substantive. One could argue that, and I would suggest the defense counsel did that at trial as well. But he was – I assume your response is he had already admitted by pleading guilty. He had already said that. Therefore, that puts him at the scene. I would also suggest that there was a little more than just the co-defendant's testimony. That included the going and obtaining the gun that was used and the co-defendant being with him and ending up with money afterwards and giving a pretty good description. If you're assuming that the co-defendant is lying, he gives a pretty good, thorough description of the inside of someone else's house and the condition of the bodies that I would suggest his testimony, although you could say it's suspect, was pretty well corroborated by all of that evidence. Let me ask you something else that nobody seems to be talking about. How far was the brother's house from the grandmother's house? And who was driving? Unfortunately, I don't know the geography very well, but it was in the same general area, same township. I'm looking at how drunk was he. Was he driving? He was driving, according to the testimony, the defendant was driving. Okay. And the Supreme Court, in its findings, recited the same thing. Okay. Mr. Barker, may we turn at this point to the testimony of Ms. Garber, who was the Children and Youth Services officer who met with Mr. Saranchak. And let me begin with the question that, assuming that Ms. Garber's testimony came in properly, then we really have your position is strengthened enormously by having a piece of evidence that has come in, which is not merely corroborative, but which goes farther, I believe, than perhaps all of what the Commonwealth had up to that point, and that is Mr. Saranchak's own statement that he was not intoxicated, but that he just lost it. Right? That's correct. He said he was a little drunk and lost it. That clearly goes to the issue of his specific intent, which is what the degree of guilt hearing was all about. That's correct. And I would also suggest the statements to the police officers did the same thing then, because he was able to describe it in some detail to them as well. Have you made the argument that his statements to Garber were voluntary? Yes. What we suggested was that they were not deliberately elicited by someone who created a coercive atmosphere. And I think the Supreme Court said there was no interrogation as such. That's correct. The problem with the Supreme Court's opinion on this point is that they actually review it in comparison to Commonwealth v. Ramos, which was the primary argument raised on appeal. Commonwealth v. Ramos involves a CYS worker who actually went in and questioned the defendant about a sex crime that was his charge as well. So essentially he wasn't an investigator. They distinguished that case, and so there's not great detail as to any other of the issues that have come up. Let me go back. The point of my previous question, Mr. Barker, was that if, on the other hand, Ms. Garber's testimony came in improperly because of a violation of either the Fifth or the Sixth Amendment, the Commonwealth did get before the trial court judge an important piece of evidence that was relevant to the issue of diminished capacity, that it otherwise would not have had. That is Mr. Saranchak's own admission that he wasn't intoxicated, that he just lost it. Would that be true? I think that's true. However, I don't believe that specific fact is sort of outcome determinative because if you look at the state court rulings, what they actually looked at was the series of actions undertaken by Mr. Saranchak which showed specific intent. All right. So your answer is simply, yes, it gets in, but in the whole scheme of things, in the whole totality of the circumstances, that is what Judge Dobin particularly emphasized here, the methodical way in which Mr. Saranchak went about perpetrating this double homicide that in all intents, I think it just didn't matter. That's correct, Your Honor. That's your argument. That's correct. Can I go back now to an answer that you gave me, to one issue that I at least think is terribly important, and that is the absence of any inquiry to the jury, any instruction to the jury as to mitigating circumstances. And when I asked you that question, and there was no such. The counsel who claimed to be ineffective did ask for such an instruction. That's correct. And the trial court denied it. That's correct. Because there had been no adequate expert testimony to support such an inquiry to the jury. Right? That's correct. Okay. And when I asked you about that, your answer was, well, diminished capacity is not the same as mitigating circumstances. But isn't mitigating circumstances an issue? Wasn't mitigating circumstances, wasn't it important for Mr. Sarancic to be counsel, to be able to argue that there were mitigating circumstances, and as Justice Gailer says, pertaining to the influence of an extreme mental or emotional disturbance. Now, if that evidence had, if he had been, if counsel had developed that evidence, would it not have been relevant at least as to the sentence, the finding of, I mean, Because the death penalty gets imposed if the mitigating circumstances don't overweigh the aggravating circumstances. So isn't it essential in this case that there was no instruction to the jury with respect to mitigating circumstances? Your Honor, again, I just would point out that I don't believe that issue is before the court, but I believe that the legal proposition. Why? Okay, why finish and then I'm going to ask you why is it before us? The legal proposition that you have stated is correct. Evidence that would fulfill a mitigating factor under the death penalty statute would certainly be relevant, and if I were the defendant, I would certainly think that it would be important for my lawyer to introduce that. But in the context of the diminished capacity defense, that is not a mitigating factor. That is a defense that reduces the degree of guilt, so it's a separate issue. Well, we don't have the degree of guilt issue before us? Not that issue, no, Your Honor. In fact, Mr. Barker, didn't the district court explicitly in her opinion, and it was in a footnote, the number of which I don't recall, but she reiterated those issues that remained unresolved before the district court, and the first such issue that she set out was ineffectiveness at the time of sentencing. I believe that's correct, Your Honor. As was mentioned earlier, I believe by Judge Sirica, there were a total of about 11 or 12 issues, and she ruled on just those, I guess it would be three with one in subparts that are before the court today. So that would have been one of the issues she did not rule on. Footnote 14 at the bottom of page 17 of the district court's opinion indicates the seven additional issues, and the first one is the denial of effective assistance of counsel at capital sentencing. So that matter is not before us in this case. That's correct, Your Honor. Yet at the beginning of your argument, you said the district judge applied the wrong standard, a de novo standard. Where in her opinion does she do that? I would suggest as it relates first to the diminished capacity. Let's start with the diminished capacity issue. Her ruling was that this evidence was admissible, therefore there had to be prejudice because it wasn't introduced. And we would suggest that's virtually de novo. She is saying, well, you had to do it so there was prejudice. And the question is whether or not the state court ruling was reasonable, and the state court decision was all of the evidence is to the contrary, therefore there was no prejudice, this defense would not have succeeded. So you're basing that on the fact you're saying all the other evidence was overwhelming, so it wouldn't have made any difference. It was overwhelming to the point, on this issue at least, that the Supreme Court called it conclusive. Didn't she specifically say that there might have been a decision of third degree homicides rather than first degree? That's correct. If the evidence had come in. That's correct. That's what she said. And that's not the question. And the question is, is the state court decision to the contrary reasonable? And the state court said given all of the other evidence, this opinion would have made no difference whatsoever. And, Mr. Barker, is there any way then for the district court to have said that, that is to have said that the PCRA court was unreasonable, or simply have weighed this so-called overwhelming evidence differently? Given the circumstances of this case, I don't see how the court could have reached that conclusion. Now, she did term it. I'm not asking whether you can see any other way that the court could have reached a conclusion. I'm asking about what the district effectively did here. She said that it was unreasonable. I thought that's especially what you were arguing, that there's de novo review going on here, not any kind of deferential review by the district court. Although she termed it unreasonable, essentially she said this evidence should have been introduced because it was the only evidence. Therefore, counsel was ineffective for not providing the documents. That's not... Mr. Barker, let me read you exactly what she said in point on page 46 of the district court opinion. Therefore, had the trial court heard the evidence as it was presented at the PCRA hearing, it cannot be said that there is no reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. What do you make of that? That is following up where she said that this is the only evidence that can be used to establish this defense. And that's what she refers to with the therefore. What she is essentially saying is she is substituting her judgment for that of the state courts who said despite the fact that this evidence may have been admissible, it doesn't change the outcome of the case. It basically doesn't undermine confidence in the outcome. And what she says is, yes, it does. I think so. And really, although she terms it unreasonable, all she has shown is that this evidence is admissible. And that's it. Anything else you want to tell us? No, Your Honors. We'll have you back on rebuttal. Thank you. Very good. Thank you. A good presentation. Mr. Noland, good afternoon. Good afternoon, Your Honors. John Noland. I'm with the Federal Defender Office. Good. We'll give you the same amount of time. Whatever that was. I think it's enough time to answer our questions. Thirty-five minutes. That's all I asked, Your Honors, enough time to answer your questions. Good. You know, it would be helpful if you could tell us from the outset what you think the district court did here in terms of the remedy and what you foresee, assuming she were affirmed, maybe not affirmed as to some of the specifics, but what do you think she meant to do and what are you looking for as relief? Well, certainly, Your Honor, what she did in her order is said that Mr. Serenachak is entitled to a new degree of guilt hearing. But she vacated the conviction. Yes, exactly. And that's what I was about to say, Your Honor. At the end of her opinion, at the very end of her opinion, she vacates the conviction. So that means she remains for a new trial. That's what I would suggest, and perhaps the lower court may need to clarify that. But either way. No, no, no, no, no, no. No, no, we want to clarify it right here because whatever we do in this case, we're going to have specific instructions. But let me suggest, Your Honor, did she intend to remand for a new trial on the guilt? I think that what she meant to do is remand for a new degree of guilt hearing. However, if you look at... She didn't say that. She doesn't say that. And what she... We review, you know, we review decisions and orders. Yes. We want to know what you want. Well, Your Honor... You never said Mr. Serenachak. Oh, no, no. That's the second question. The first question is what do you think she did. Well, I would suggest that when you look at the statement to police issue and you look at her opinion in that regard, she states that as relief, on page 48, as relief, Mr. Serenachak seeks to have his plea vacated and a new trial ordered. Okay. She does say that there. And then at the end of her opinion, she specifically states that she vacates Mr. Serenachak's conviction and allowed the Pennsylvanian to retry him within a reasonable amount of time. Okay. Now, I read that as this is not a remand for a degree of guilt hearing. This is a remand to square one where then he elects whether he wants to go to trial or to enter a plea or do something else. Well, I understand that Karmeloff made the point that if Mr. Serenachak goes back and then he could, it would be up to the court for him to say that something was wrong with that guilty plea or things like that. However... Excuse me. Excuse me. Could I just jump in here, though? Because I understand what the end of the opinion says. But the very first paragraph of the district court's opinion says, for the reasons that follow, the petition will be granted in part and leave will be given to the Commonwealth to conduct a new guilt phase hearing and sentencing hearing. So hasn't she explicitly said at the outset what she intends to occur here? And beyond that, is it possible, if you believe that the first-degree murder determination was infirm, to grant the relief without vacating the conviction in that there is no conviction, as I understand it, under state law until sentence has been imposed? That is correct, Your Honor. We agree with that, that that would have been the only way she could phrase it, to vacate the conviction. So even if we affirm her, which is what you want us to do, we simply send it back with a direction that the guilt phase, or rather that the penalty phase, be retried. Isn't that the only relief to which you're entitled and ever expected to receive here on appeal? Not that the penalty phase be retried, Your Honor, but that a new degree of guilt hearing be granted. The degree of guilt phase. Now, I would suggest, though, that, Your Honor, that part of, as Your Honor is well aware, having worked in the state courts in Pennsylvania, that at a degree of guilt hearing, there is a colloquy, and certainly a defendant who is involved in that colloquy should be represented by competent counsel. And so you also have that issue here that Mr. Cerenchik was not represented by, effectively. Well, I have a feeling that when this goes back for any purpose whatsoever, Mr. Watkins is not going to be representing him again. I would agree with that, Your Honor. Mr. Nolan, as I read your brief, you never challenge Mr. Cerenchik's voluntariness or competency to have entered the guilty plea to homicide. Is that correct? That's correct, Your Honor. Okay. So we start with the, whatever we do, we start with the proposition that there's no challenge to his guilty plea. That's correct, Your Honor. We did not raise that as an issue in the district court, correct? If I may. And there's evidence by the psychiatrist that he, because that's specifically what he was requested to do, that he was competent to enter that guilty plea. Dr. Kruszewski was, in fact, asked by the court to do that evaluation. That was one of the purposes. That's right. He was not asked to, although he was, the court was asked to direct the psychiatrist to give an opinion as to his competency at the time of the homicide. He, the district court, the trial court did not ask him to do that, and that one of your arguments is that counsel was ineffective for not pushing that point. Yes, Your Honor. The counsel was ineffective for not getting his own expert or, in fact, asking this expert to do more. So if I could start, tell us what you want. I would like to start with just a little piece about the diminished capacity issue. No, no, no. Hold on a second. Hold on. Are you saying that you don't want the vacation of the guilty plea? The guilty plea stands. The guilty plea stands. You want a new degree of guilt hearing before a judge, before a jury. He gets to decide, or has he already decided that he's going to go before a judge? That's a compound question. It sure is. But these are all questions that the trial judge is going to have to face. Yes. And I would suggest that the trial judge can deal with those issues at the time when the case goes back, because at that point, Mr. Saranchak can have competent counsel make these determinations. Sounds to me like you're saying that you do not concede that he has entered a valid plea of guilty to homicide. You want that vacated as well. Ultimately, yes, Your Honor. Wait a minute. Have you raised that by not raising it in the brief? We didn't raise a specific issue regarding the guilty plea itself. So that's waived to go back to the first part of Judge Sirica's question. Well, it may have. No, but he's not conceded. I'm trying to press him to concede it. And he doesn't want to do it. Well, let's see. I can't. I don't, Your Honor. But you've never raised that. How can you now argue at all that there's something infirm about the guilty plea? Well, what I would suggest is that the ineffective assistance of counsel, based on the three issues that were granted below, have changed the picture of this case in a big way. And I think that Judge Rambo could see that. I mean, you have confessions to the police and confessions to someone else. But the guilty plea supersedes at least with respect to his guilt of the homicide. Doesn't that supersede those? Those questions go to the degree of guilt, perhaps. But I find it difficult to allow you to get out of the fact that you haven't challenged his competence. There's no evidence that would challenge the voluntariness or his competency at the time he pled guilty. And, Your Honor, I have to concede that point, yes. Okay. Now, in the colloquy itself, however, Judge Dolben told him a wrong statement of law, that he had to waive his right to challenge any statements. That has to do with the suppression issue, right? Yes, Your Honor. Okay. And its implication solely is for purposes of the degree of guilt here. The wrong legal statement, its wrongness was in not realizing and not advising that the evidence could still be challenged at the degree of guilt hearing, notwithstanding a waiver of it earlier in the proceeding. Isn't that correct? Yes, Your Honor. Yes. I'm confused, though, Mr. Noland, at this point, simply not with respect to the question of waiver, which I don't understand to be before us, but simply as a matter of historical fact. Because you have represented Mr. Saranchak in the PCR proceedings, in addition to the appeal to this court, has there ever been an attack made anywhere along the line to the competency of the guilty plea or any other issue with respect to the guilty plea? No, Your Honor. Is there anything in the history of this case? No, Your Honor. Then we really shouldn't be spending our time at all on that, should we? I agree. I agree. I mean, we're talking about nothing but the degree of guilt hearing here, are we not? Yes, Your Honor. And is that part of the sentencing or is that part of the conviction? Just the conviction, Your Honor. The sentencing, as my colleague has expressed, is not before the court. Judge Rambo held those issues in abeyance and just decided these three issues. So what's the basis for vacating the – you want us to affirm that, which Judge Rambo did, and Judge Rambo vacated the conviction, and what's the basis for vacating the conviction once you tell us or once we agree, Judge Smith has said, that the guilty plea as such was never challenged? Well, I guess what she did is vacate the conviction of first-degree murder then. I guess you could think of it in those terms. But she vacated the conviction of first-degree murder based on the failure of counsel to put on evidence of diminished capacity. She didn't say that, but you want us to read that into her language. Well, I suppose that's what she did. I don't mean to read her mind, but that's what it appears that she did. Based on Judge Smith's questions as well. Well, that makes a lot of sense. So if I could talk about diminished capacity for just a moment, Your Honors. I think one of the first things that needs to be resolved with respect to this claim is the question of what review is owed under AETPA. And I would suggest that what happened here is quite similar to what happened in the Hummel case, in which Judge Slobiter decided that there was no deference owed to the state court. In the Hummel case, the Pennsylvania Superior Court applied the same wrong standard to the prejudice analysis that they did here, that the Pennsylvania Supreme Court did here. They applied what Your Honor called a show standard rather than the reasonable probability standard. The Pennsylvania Supreme Court in this case applied the same wrong standard. They stated that the petitioner must show that but for the errors, the outcome of the trial would have been different, as opposed to the reasonable probability standard. And if you look at the Hummel opinion, and we cited this in our letter to the court a few weeks ago, the language was the same. So I would start there to say that deference is not owed to the state court, and that for that reason, a lot of the arguments that were made by opposing counsel regarding the deference issue. But I would suggest that even if you do decide that there is deference owed here, that Judge Rambo's opinion was right on deficient performance, and her decision was right regarding the prejudice analysis. Judge Smith, it looks like you're ready to ask a question. I know there's a pause. No, I don't want to interrupt you, Mr. Nolan. Go ahead. Thank you. Okay. Now, the deficient performance aspect of what Judge Rambo decided was not addressed by the Pennsylvania Supreme Court. And, in fact, as you heard on the other side, they're not really even challenging the deficient performance aspect of the case here. What they're challenging is the prejudice. And what I would like to start with is that there are several reasons why the Pennsylvania Supreme Court got this wrong. And if you decide that deference is owed, why it's unreasonable. And the first is that it was an unreasonable application of Strickland, an unreasonable determination of the facts. Pennsylvania didn't strike that. In the facts that the trial court. Take a breath. Thank you. Okay. Go ahead. The facts that the Pennsylvania Supreme Court relied on in finding that the evidence was overwhelming, as they stated several times, ignored all of the evidence that was elicited during the PCR hearing. Their use of the word overwhelming simply repeated the very word that had been used by the PCRA judge, who just happened to have also been the trial judge who made the decision. I understand that, Your Honor. But Strickland teaches us that lesson. In Strickland, they actually called the trial judge to the stand during a post-conviction hearing. That was also a bench trial. And the trial judge said, that would not have changed my verdict. And the United States Supreme Court said that that is not a relevant question ultimately in determining that this is an objective standard. And, Judge Sirica, you started earlier with that comment, that this is an objective standard rather than subjective. And what the Pennsylvania Supreme Court did is they took what the PCR judge said and said, well, that's enough for us. And I would submit that the Pennsylvania Supreme Court, first of all, applying the wrong standard, found that because Judge Dolben said those things, that was enough for them. And if you look, I thought they also said, and let's assume you're right on that, I thought they also said, made the statement that the Commonwealth is arguing here, that the totality of the other evidence was so overwhelming that it was not prejudicial. Correct. But where the Pennsylvania Supreme Court, there was a litany of evidence that they pointed to in their opinion, which came from the trial judge's PCRA court opinion. But what I would suggest is that other evidence that they are talking about comes really from one source, which is Roy Miles. Now, Roy Miles… Or the police. Well, or the police, right. But really the evidence, Your Honor, that they're talking about to refute diminished capacity are these issues that they say show specific intent. And that comes from the Commonwealth. The Commonwealth argued that statement that Mr. Saranchak supposedly made to Roy Miles about going out to get some money. That comes from Roy Miles and nowhere else. And Roy Miles was a co-conspirator, a co-defendant who pled guilty in order to get a deal. All of which simply goes to weight of the evidence, which is precisely the way state trial judges charge the import of such evidence. And certainly you're not suggesting that this trial judge, with whatever experience he had or any other finder effect properly instructed on a corrupt and polluted source, didn't take that into account in weighing the evidence as he did and still finding it overwhelming here. Well, yes, Your Honor. And he may have done that at the original trial. What I'm suggesting is relying on that evidence at post-conviction was an unreasonable determination of the facts based on all of the evidence that was elicited. At the PCRA hearing. At the PCRA hearing. The trial court's opinion on the PCRA after the denial of PCRA did not address anything about Roy Miles. And in fact, Roy Miles at the post-conviction hearing recanted some of his testimony. He was also a witness whose testimony was allowed to go unchallenged in some ways during the trial because he was permitted to take the fifth regarding an issue of where he got a large sum of money that night. And that is certainly relevant to this question of specific intent because the Commonwealth relies on this statement from Mr. Saranchak that he was going to get some money and he knew where to get it and might have to shoot someone. Yet Mr. Miles has a lot of money later that night and is permitted to not answer the question as to where he got that money from. What about the facts of the crime? The way the crime was committed? Well, first of all, I need to say that the facts of the crime came from Roy Miles. The facts that were relied on all came from him. There were no other witnesses there. I understand what you're talking about. But where the bodies were and the facts were. They were shot in the head. Yes. Yes. That there were. Right. Certainly. I mean that could be circumstantial evidence of premeditation. They were reclining. There was no. Well, it could be, Your Honor. If you didn't have all of the evidence here about Mr. Saranchak's history, his delusional behaviors. No, no, no. You're weighing one against the other which is proper. Yes. But you're saying that the initial evidence of premeditation or intent was deficient. And I'm not sure that it was. Well, Your Honor, I didn't mean to say it was insufficient. I'm saying it doesn't stack up against the evidence that is now before the court. It was all developed in state court. Evidence of school records, evidence of lay witnesses who saw him that night. His two brothers who talk about his behavior that night as being delusional. And evidence from the expert witnesses. Why isn't the characterization doesn't stack up simply a euphemism for weighing the evidence differently? Well, I would suggest that the district court got it right when she determined that it was an unreasonable determination of the facts in light of all of this other evidence. When you have the psychiatric testimony, when you have school records showing severe mental illness prior to that time, even records showing him acting delusional in times before. And the other thing you have here is his behavior with the police the following night, which was completely delusional, talking about being on a mission and things like that. You see from the evidence the following day, he's drinking all day. And one of the officers says as he's brought in he has glassy eyes and smells alcohol. And he's acting in this delusional manner, which I would suggest is consistent with his lack of ability to premeditate and deliberate. Mr. Noland, would you comment on Mr. Barker's response to my question at the beginning with respect to the failure of the trial court to agree to give an instruction to the jury with respect to mitigation evidence? As I understood, Mr. Barker said that's not really before us. That's not an issue in anything we have to decide. Do you agree with that? Well, I don't completely agree. I would suggest, Your Honor, that the actual claim in which we suggest that counsel was ineffective at the penalty phase is not before you. But I would suggest that that is a mitigating circumstance that Your Honor has pointed out would be important because it shows some of the prejudice here that Mr. Saranchek was subject to because of counsel's failure to investigate his history at all and give any of this information to this doctor, who then could have testified at the degree of guilt hearing with respect to premeditation and deliberation. Now, Justice Thaler, presumably, would have gotten a response from the majority. Justice Thaler says, gee, I believe that shouldn't have been omitted or that shows ineffectiveness. How does the majority of the Supreme Court answer that point? The majority basically said that counsel had a reasonable basis for not further pursuing what he did. Is that consistent with the Supreme Court's decision in Montpelier? You all look at the Third Circuit case. Nobody really talks about the Supreme Court's decision in Montpelier, which I have a real interest in, as you know. As I recall, and I haven't reread it, as I recall, the Supreme Court said counsel was ineffective, or I was right in saying counsel was ineffective, with failing to investigate further. Isn't that the same as what happened here? Well, it is, Your Honor, and I guess one of the reasons we didn't brief that very extensively is the Commonwealth has conceded that. They basically conceded deficient performance. They're just relying on prejudice. But I would suggest that it does go to show that deficient performance in this situation as well. Now, with respect to the… Don't you have to concede that the Ms. Garber issue is really not a substantial issue? She wasn't sent by the prosecutor. She wasn't an agent for the prosecutor. Well, I'm not going to concede that, Your Honor. He initiated the contact, didn't he, Your Honor? Well, I think the record is unclear about whether he initiated the contact with respect to the issue, the actual meeting where these statements allegedly occurred. Because what happened, if you'll recall, the evidence is that she went to see him because he was in custody. I would suggest it's a direct result of his custody that these issues come up about his children. Well, I think he was in custody. That business about Cervantes doesn't do anything to me. And they didn't argue that in the district court as well. That's why the district court didn't address it. All right, but he was in custody. But he did say more, and he did say to her, I did something bad, and I'll go to prison for a long time. That was after she started questioning him. If I could just back up for a moment, Your Honor. She went to see him one time. For the children. About the children, not with the children. Then they had a court hearing, and the court issued an order, and she went back to see him to explain that order to him. So that's why she's there. And she's an employee of the county whose interaction with him is triggered because of his custody status. She goes to have this conversation with him, and then she asks him specifically about the case. And it was after that, and the Pennsylvania Supreme Court decided – Did she say that some of us wondered why you did it or something before he said, I'm going to go to – I did something bad? I believe – What was the sequence of that? I believe if you look on page 91 of A9, the appendix, she talks about – she says, I asked him, I asked him. The second question I asked was why. Then she says, none of us could understand how this happened. So I believe there's several questions before she gets to that. And then after that, he says, I did something bad or before that? After that, Your Honor. He doesn't talk about the case until she starts asking him questions. And then once she starts asking him questions, which is certainly interrogation, and the Pennsylvania court found that this was just a conversation. I mean, the district court was absolutely right when she found it's difficult to imagine questions more likely to evoke an incriminating response. And she found that this determination was contrary to Ennis, which is where that language comes from. And we would suggest that she was accurate when she did that. With respect to the – So it's contrary to Ennis? Was that the basis that the district court made that determination, Mr. Noland? Yes, Your Honor. Did Estelle enter into the discussion of this issue? It absolutely did, Your Honor, and Estelle enters into the discussion of this issue with respect to this connection to the prosecution. The Commonwealth is arguing this agency, these agency cases. We're not saying she was an agent of the prosecution. She was a county employee, and it's very similar to Estelle because in Estelle, a psychiatrist went to interview a defendant and starts asking him about the details of the case and then becomes a witness at the penalty phase for the prosecution. And the Estelle case says the role of the psychiatrist changed. And what Judge Rambo found is that the role of Ms. Garber changed in the same way the psychiatrist did in Estelle. So Judge Rambo finds that it's contrary to Ennis, that it's also contrary to Mathis on the question of related to custody or not, and she also finds in Estelle. Thank you, Your Honor.